UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
CASE NO. 24-5287
(District Court No. 5:15-CV-158-BJB-LLK)
*Electronically Filed*

IN RE:  QUINCY OMAR CROSS

### Respondent's Response to Quincy Cross's Motion for Leave to File a Second or Successive Habeas Corpus Petition

Comes the Attorney General of the Commonwealth of Kentucky as counsel for Respondent, Warden Ivan Krow, and states the following in response to Quincy Cross's motion for leave to file a second or successive habeas corpus petition:

1. Quincy Cross has moved pursuant to 28 U.S.C. § 2244 to file a second federal habeas corpus petition. (Doc. 12.) Cross argues he has just discovered new evidence related to witness credibility, which should allow him to litigate the issues in a new proceeding. (Doc. 12, Page 11.) Cross alleges that the evidence related to Susan Galbreath was discovered in December 2022. (Doc 12, Page 6.)

2. In *Gonzalez v. Crosby*, 545 U.S. 524, 529–30 (2005), the Supreme Court discussed when a second or successive petition would be allowed:

> The relevant provisions of the AEDPA-amended habeas statutes, 28 U.S.C. §§ 2244(b)(1)-(3), impose three requirements on second or successive habeas petitions: First, any claim that has already been adjudicated in a previous petition must be dismissed. § 2244(b)(1). Second, any claim that has *not* already been adjudicated must be dismissed unless it relies on either a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence. § 2244(b)(2). Third, before the district court may accept a successive petition for filing, the court of appeals must determine that it presents a claim not previously raised that is sufficient to meet § 2244(b)(2)'s new-rule or actual-innocence provisions. § 2244(b)(3).

Another requirement is added by 28 U.S.C.A. § 2244(b)(2)(B)(i): "[T]he factual predicate for the claim could not have been discovered previously through the exercise of due diligence[.]"

3. The district court denied Cross's original federal habeas corpus petition on August 19, 2022. *Cross v. White*, No. 5:15-CV-158-BJB-LLK, 2022 WL 3573248 (W.D. Ky. August 19, 2022), *reconsideration denied sub nom. Cross v. Hughes*, No. 5:15-CV-158-BJB-LLK, 2024 WL 1308151 (W.D. Ky. Mar. 27, 2024). In its Opinion & Order, the court already answered many of the complaints Cross raises in his current motion. In its very first paragraph, the court stated:

> Quincy Omar Cross petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from a state conviction for the kidnapping, rape, and murder of Jessica Currin. During Cross's trial, two women—Victoria Caldwell and Vinisha Stubblefield—testified that Cross sexually harassed Currin, forced her to Jeff Burton's house, struck her, sexually assaulted her while she was unconscious, strangled her to death, and then ordered several others remove the body and burn it at a middle school. Another woman, Rosie Crice, testified that Cross confessed that he was present during the crime. All the women had changed their stories from what they initially said years earlier after the murder was first discovered. And Crice even recanted during the trial, claiming the police coerced her to lie. All the women were cross-examined by defense counsel regarding these inconsistencies. In the end, a jury convicted Cross of multiple charges and the judge sentenced him to life.

*Id.* at *1.

In its second paragraph, the court noted that the Kentucky Innocence Project began investigating this case at least as far back as 2012. *Id.* The court made clear that many of the complaints that Cross raises now were investigated by the Kentucky Innocence Project a decade before:

> After Cross's conviction, the Kentucky Innocence Project began looking into his case. Dale Elliot Affidavit (DN 6-3) at 1. The record doesn't make clear when and to what extent Cross was aware of this. But in July 2012, Dale Elliot (a retired

police officer who served as an investigator for the Innocence Project) signed an affidavit explaining his investigation into Cross's case. *Id.* at 1, 8. Elliot concluded that the case deserved a second look because, in his view, law enforcement officers abused their power and violated Cross's rights in order to get a conviction. *Id.* at 8. Elliot believed that Cross was a convenient political scapegoat because the Commonwealth had fumbled the prosecution of the initial suspects. *Id.* at 5–6. According to Elliot, the Attorney General was under pressure to solve the crime while running for higher officer. *Id.* So in turn, he pressured the Kentucky Bureau of Investigation to resolve the case. *Id.* The lead detective was a narcotics detective with no homicide experience, so he used intimidation tactics from narcotics to flip witnesses. *Id.* at 6. Elliot believed the police engaged in serious misconduct either out of malice or incompetence. *Id.* at 8.

Elliot reached these conclusions based on two types of information. First, the physical evidence did not match the story told by the Commonwealth's witnesses. They said the body was naked and moved with a blanket, but the body was found with clothes and without a blanket. *Id.* at 7. Also, investigators found no body decay or maggots, as would've been expected if the body wasn't moved and burned until it began to stink. *Id.*

Second, several of the key witnesses were paid and coerced to give testimony inculpating Cross, despite having inculpated different suspects earlier in the case. *Id.* at 1–4. Caldwell had received $40,000 in reward money for cooperating and had initially told police a different story. *Id.* According to Elliot, Caldwell said she and Stubblefield made up statements to get the money despite not knowing anything about the crime. *Id.* at 2. Her testimony at trial, according to Elliot's description of Caldwell's post-trial statements, was just a recitation of what investigators told her to say. *Id.* And her diary was allegedly written in the back seat of the detectives' car at their direction. *Id.* Supposedly, Caldwell agreed to do this because the detectives were paying her bills and threatened to cut her off and even take her child if she refused. *Id.* at 3. Elliot also alleged that "several people" said one of the detectives fathered her child, though Caldwell denied this. *Id.* at 3–4. Caldwell did not directly inculpate or exculpate anyone, however, as she said she wasn't involved and therefore didn't know if Cross committed the crime. *Id.* at 2. Caldwell did, however, enter an *Alford* plea to abuse of a corpse and evidence tampering, for which she received a 5-year sentence. Op. (DN 15) at 2 n.1; Gov't Rule 5 Answer (DN 13) at 8, 14. Caldwell did not attest to these statements under oath, either; only Elliot did. In fact, Caldwell has since signed an affidavit denying the statements conveyed through Elliot and reaffirming her trial testimony. *Cross*, 2018 WL 3814615, at *3.

Elliot's affidavit also asserted that Crice, Caldwell's sister, was addicted to narcotics and willing to testify for a small amount of money. Elliot Aff. at 4–5.

3

> Elliot says Crice initially got involved for money, but stayed involved because officers threatened to jail her and take her child away if she did not continue to lie. *Id.* at 3–5. Crice, however, said as much on the stand during the trial. After Crice testified for the Commonwealth, Cross called her and she recanted her testimony, said she lied, and testified that detectives threatened to take her children away. *Cross*, 2018 WL 3814615, at *2. This was the basis for her perjury plea and conviction. *Id.*
>
> Elliot also interviewed Stubblefield in April 2012. Stubblefield Interview (DN 6-2) at 52. Stubblefield said she did not get paid by the detectives, but that Caldwell did. *Id.* at 3. Stubblefield also stated that the detectives coerced her into lying about Cross and her involvement in the murder by threatening her and her mother with prosecution. *Id.* at 9–10, 13, 25–27, 30–31, 33–35, 37, 40. But her statement to Elliot didn't exculpate Cross, as she said she was not directly involved in the murder. *Id.* at 16. And she admitted that she feared Cross. *Id.* at 38; *Cross*, 2018 WL 3814615, at *3 ("[S]he still implicated Quincy [Cross] and observed that she was afraid of him."). Stubblefield ended up pleading guilty to the same charges as Caldwell and received a 7-year sentence. Stubblefield Interview at 5.
>
> Joe Currin, the victim's father, agreed with Elliot's conclusion in an affidavit signed in October 2014. Joe Currin Affidavit (DN 6-4) at 5. Currin believed that the police, for political reasons, adopted a story concocted by Susan Galbreadth [sic], a citizen who had an interest in clearing one of the original suspects and in getting reward money. *Id.* at 1–4; *see* Tom Mangold, *Murder in Mayfield*, BBC (May 17, 2013), https://www.bbc.com/news/magazine-19558804. He also believed Caldwell and Burton were not involved, the witnesses were forced to lie, and the testimony did not match the physical evidence. Joe Currin Affidavit at 1–4. This evidence forms the basis of Cross's actual innocence claim.

*Id*. *3-4. The court understood that Cross "knew or should have known about the Innocence Project's evidence" in 2012. *Id*. *4. Thus, in 2012, the Kentucky Innocence Project and Cross were aware of issues with Caldwell, Stubblefield, Crice, Tom Mangold, and Susan Galbreath, and those are the issues which Cross now wants to flesh out. *Id*. *3-4.

    4.      Now Cross alleges he has acquired new evidence that he could not have discovered previously. Of course, given the above-noted history, it is clear that Cross and the

4

Kentucky Innocence Project simply did not follow through to fully investigate known issues a decade earlier. Both Kentucky state law (*Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983); *Foley v. Commonwealth*, 425 S.W.3d 880, 884 (Ky. 2014)) and 28 U.S.C.A. § 2244(b)(2)(B)(i) make clear that a criminal defendant cannot sit on his claims, but must pursue his relief diligently. And clearly Cross did not do that in this case.

Cross and the Kentucky Innocence Project, although aware of issues with the witnesses, did not pursue any investigation for over a decade. It simply cannot be said that Cross pursued his relief diligently.

5. Cross also suggests that his previous habeas counsel was ineffective, but that argument is foreclosed by 28 U.S.C. § 2254(i). *See Post v. Bradshaw*, 422 F.3d 419, 422-23 (6th Cir. 2005).

6. For the Court's information, Cross also has a post-conviction motion based on the same factual predicate currently pending in the state trial court.

## CONCLUSION

Wherefore, for the above-stated reasons, this Court should deny Cross's motion for leave to file a second or successive habeas corpus petition.

Respectfully submitted,

**Russell Coleman**
Attorney General of Kentucky

/s/ Todd D. Ferguson
**Todd D. Ferguson**, KBA No. 82141
Assistant Attorney General
Office of the Solicitor General
Criminal Appeals Division
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204
(502) 696-5342
(502) 696-5533 (FAX)
todd.ferguson@ky.gov

Counsel for Respondent

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Respondent's Response to Quincy Cross's motion for leave to file a second or successive habeas corpus petition has been filed electronically with the Office of the Clerk of the United States Court of Appeals for the Sixth Circuit, on this 9th day of May, 2024, to be considered at the convenience of the Court. I further certify that the foregoing response was served, through the CM/ECF system, on Hon. Miranda J. Hellman, Counsel for Quincy Cross, the same date.

/s/ Todd D. Ferguson
Assistant Attorney General
